IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HOMEAWAY, INC., HOMEAWAY.COM, INC., | § | |
| | § | |
| | § | CIVIL ACTION NO. 1:13-cv-1087 |
| Plaintiffs, | § | |
| | § | COMPLAINT FOR TRADEMARK |
| vs. | § | INFRINGEMENT, DILUTION, FALSE |
| | § | DESIGNATION OF ORIGIN,  UNFAIR |
| AIRBNB, INC., | § | COMPETITION, AND UNJUST |
| | § | ENRICHMENT |
| Defendant. | § | |
| | § | |
| | | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S VERIFIED COMPLAINT
## AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiffs HomeAway, Inc. and HomeAway.com, Inc. (hereinafter collectively referred to as "Plaintiffs" or "HomeAway"), allege the following facts in support of this action for trademark infringement, unfair competition and trademark dilution under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. ("Lanham Act"); for trademark dilution under Chapter 16 of the Texas Business and Commerce Code; and for trademark infringement, unfair competition, and unjust enrichment under Texas common law.

### I.    NATURE OF THE ACTION

1.     HomeAway is an award-winning market leader in the provision of online marketplaces for vacation and short term rental properties.  Soon after its inception in 2005, HomeAway began using and has continued to use a unique and arbitrary logo of a birdhouse ("Birdhouse Mark") in connection with its online rental services.  HomeAway has also engaged in other distinctive bird- and birdhouse-themed promotional activities that have only increased the strength and recognition of the Birdhouse Mark among property owners and managers (collectively "Owners"), travelers, renters, other consumers (collectively "Travelers") and the general public.

2.      HomeAway's online marketplace serves Owners and Travelers in the United States and around the world through dozens of branded websites in multiple languages. HomeAway's Birdhouse Mark is a global unifying brand for its websites and businesses, both in the United States and around the world.  Whether an Owner or a Traveler accesses, for example, Abritel.fr in France, AlugueTemporada.com.br in Brazil, or HomeAway.com in the United States, the appearance of the Birdhouse Mark confirms that a single source, HomeAway, stands behind the services.

3.      Airbnb, Inc. ("Airbnb" or "Defendant"), a more recent entrant into the highly competitive market for online travel and short term rental services, markets online travel rental services and has described its services as "the easiest way for people to monetize their extra space." Like HomeAway, Defendant targets travelers around the world, but, does so through a single Internet website – airbnb.com.

4.      Defendant is well aware of HomeAway and its use and promotion of the Birdhouse Mark. In 2011, Defendant's CEO visited HomeAway's headquarters and physically stood inside the two story replica of a birdhouse that dominates HomeAway's headquarters.

5.      Despite its knowledge of HomeAway's rights, on December 16, 2013, Defendant launched a birdhouse-themed national advertising campaign to drive bookings to its airbnb.com rental engine, including, among a plethora of birdhouse images and sounds, a birdhouse logo confusingly similar to HomeAway's Birdhouse Mark ("Birdhouse Promotion"). Defendant's Birdhouse Promotion even goes so far as to present three-dimensional birdhouses in the style of vacation homes, historically HomeAway's primary market segment, a market segment that Defendant ignored until recently.  Despite a myriad of non-infringing trademarks and promotional themes available to it, Defendant deliberately copied HomeAway's global brand to promote its own business, to obtain unfair commercial advantage while it is attempting to expand into the vacation home rental segment, and to damage the brand that HomeAway has grown and protected for nearly eight years.   Defendant's Birdhouse Promotion is a blatant and intentional infringement

and dilution of HomeAway's Birdhouse Mark causing incalculable damage to HomeAway's goodwill.

6.      Defendant chose a birdhouse logo and a birdhouse-centered theme for its first national marketing campaign with full knowledge of HomeAway's ownership and extensive use of the Birdhouse Mark and with the intent to trade off of the goodwill that HomeAway has developed in its Birdhouse Mark through years of extensive use and promotion.  Although Airbnb's use of the Birdhouse Promotion for property rental services infringes the Birdhouse Mark and damages HomeAway regardless of the specific characteristics of Airbnb's properties, Airbnb's recent attempts to expand its business into traditional vacation markets only exacerbates the already substantial harm to HomeAway.

7.      On information and belief, Defendant, through mimicry and deception is attempting to increase its business overall and in the traditional vacation rental market segment, expanding from its usual property offerings in major cities while at the same time destroying the distinctiveness of HomeAway's Birdhouse Mark in the online travel industry.   Defendant's copying of HomeAway's distinctive mark is likely to confuse consumers and other members of the relevant public, initially and/or at the point of sale, as to the source or sponsorship of Defendant's product or service, or to lead consumers to believe incorrectly that Defendant is authorized by, sponsored by, or affiliated with HomeAway, or that airbnb.com is yet the latest addition to HomeAway's dozens of birdhouse-branded websites serving clients in the United States and around the world.  In addition, Defendant's Birdhouse Promotion, including the use of a logo very similar to the Birdhouse Mark, has diluted and is likely to continue to dilute the distinctiveness of HomeAway's Birdhouse Mark, if not enjoined.

## II.      JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction over the federal law claims pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims

that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.     The Court has personal jurisdiction over Defendant.  Defendant has engaged in a continuous and systemic course of doing business in Texas, and a substantial portion of the activities complained of herein have occurred and continue to occur in this District.   On information and belief, Defendant lists and rents rental properties located in Austin, Texas, in this judicial district, and elsewhere in the State of Texas.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 because defendant has committed and continues to commit tortious acts in this judicial district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this judicial district.

## III.     THE PARTIES

11.     Plaintiff HomeAway, Inc., is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business located at 1011 W. Fifth Street, Austin, Texas.  Plaintiff HomeAway.com, Inc. is a corporation organized under the laws of the State of Delaware and a wholly owned subsidiary of Plaintiff HomeAway, Inc., with its principal place of business located at 1011 W. Fifth Street, Austin, Texas.

12.     HomeAway is informed and believes that Defendant Airbnb, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 888 Brannan Street, 4th Floor, San Francisco, California 94103.  Like HomeAway, Defendant facilitates lodging for travelers through an online website.

## IV.     HOMEAWAY AND ITS BUSINESS

13. Founded in 2005, HomeAway, Inc. operates an online vacation rental property marketplace that enables property owners and managers to market properties available for rental to Travelers who rely on HomeAway's websites to search for and find available properties.  Travelers use the network of websites to search for vacation rentals that meet their desired criteria, including location, size and price. Travelers that find properties that meet their requirements through

HomeAway's marketplace are able to contact Owners directly by phone or through form-based communication tools on HomeAway's websites. *See* Declaration of Carl Shepherd ("Decl.") at ¶1.

14.     HomeAway initially integrated several websites into a single online marketplace, and, in June 2006, HomeAway launched HomeAway.com, a vacation rental website with about 60,000 listings. Today, HomeAway operates the world's largest online marketplace in the vacation rental industry, comprising a number of websites, including the following: HomeAway.com, VRBO.com®, VacationRentals.com, OwnersDirect.co.uk, HomeAway.de, Abritel.fr, Homelidays.com, CyberRentals.com, GreatRentals.com, BedandBreakfast.com, FeWo-Direkt.de (Germany), HomeAway.co.uk (UK) , HomeAway.es and TopRural.com (Spain), AlugueTemporada.com.br (Brazil), HomeAway.com.au (Australia), HomeAway.se (Sweden), HomeAway.pt (Portugal), HomeAway.ca (Canada), HomeAway.mx (Mexico), HomeAway.com.co (Colombia), HomeAway.com.ar (Argentina),    HomeAway.at (Austria), HomeAway.dk (Denmark), HomeAway.no (Norway) and HomeAway.it (Italy).    Through HomeAway's online marketplace, Travelers can search and/or book fully furnished, privately owned residential properties, including homes, condominiums, villas, cabins, houseboats, tee-pees, tree houses, and other unique properties, that Owners rent to the public on a nightly, weekly or monthly basis. HomeAway's online marketplace brings together millions of Travelers seeking vacation rentals online with hundreds of thousands of Owners of vacation rental properties located in all 50 of the United States and 171 countries around the world. *See* Decl. at ¶1.

15.     HomeAway's online marketplace serves two major constituents: Owners on one side and Travelers on the other. Owners for some properties pay listing fees, which are typically annual subscriptions, to provide detailed listings of their properties on HomeAway's websites and reach a broad audience of Travelers seeking vacation rentals. Additionally, certain Owners may choose to rent their properties on a commission basis via a HomeAway product launched in September 2013. Travelers visit HomeAway's marketplace at no charge and are able to search and compare HomeAway's large and detailed inventory of listings to find vacation rentals meeting

their requirements.  Travelers transact directly with Owners to arrange their stay.  Travelers do not pay a fee to HomeAway for the services it provides. *See* Decl. at ¶ 1-2.

16.     HomeAway operates six (6) online rental websites directed principally to Owners and Travelers in the United States, including HomeAway.com, VRBO.com®, VacationRentals.com, BedandBreakfast.com, Cyberrentals.com and GreatRentals.com.    The combination of Homeaway.com, VRBO.com and VacationRentals.com alone offer one of the largest vacation rental distribution networks in the world.

17.     HomeAway derives its primary revenue from Owners who advertise on its websites, but the ability to attract Travelers to its sites with a robust portfolio of listed properties is a critical part of its ability to generate revenue.  Using a well-established, internet based technique called the network effect, Travelers who visit HomeAway's website are attracted by the wide selection, and the ability to reach these Travelers attracts more Owners to list which in turn provides more and better rental options to attract more Travelers.   HomeAway also provides 24 hour/7 day customer service, an online community support for Owners, as well as property software solutions for property managers and innkeepers.  *See* Decl. at ¶2.

18.     Since its inception in 2005, HomeAway has experienced rapid growth and financial success.  *See* Decl. at ¶3.

19.     HomeAway's operations expanded from 87 employees on December 31, 2005, to worldwide total of 1,461 employees as of September 30, 2013. *See* Decl. at ¶3.

20.     From 2006 to September 30, 2013, the number of listings on HomeAway's network of websites grew from a single site with 60,000 listings to several sites with an aggregate of 773,000 paid listings.  HomeAway's revenues have grown each year since 2008.  In 2012, total revenue increased by over 20% from the prior year and exceeded $280 million.  *See* Decl. at ¶3.

21.      HomeAway and its online marketplace have received numerous accolades and awards, including Travel Weekly Magellan Awards Gold Winner (2013) (one of the best vacation rental services in the hospitality industry); Ernst & Young Entrepreneur of the Year (2012); Travel + Leisure Best Apps and Websites for Travelers (August 2012); Leisure and Tourism – Customer

Service Department of the Year (February 2012); Deloitte Technology Fast 500 (2011) (HomeAway recognized as one of the fastest growing companies in North America); Kiplinger's Personal Finance Best of Everything 2010 (HomeAway named best vacation rental site).

22.     HomeAway engages in charitable giving through its internal Corporate Giving Committee which donates volunteers and funds to organizations as voted on by HomeAway employees.

23.     HomeAway, Inc. is public company with shares traded on the Nasdaq OMX Exchange (Ticker:  AWAY).

24.     The market to provide online listing, searching and marketing services for the vacation rental industry is highly competitive and fragmented with few barriers to entry. HomeAway's trademarks, including the Birdhouse Mark, are essential assets of its business which gives it a competitive advantage in the online market for vacation rental listings.  *See* Decl. ¶¶7-11.

## V.     HOMEAWAY'S "BIRDHOUSE MARK"

25.     Since as early as July 2006, HomeAway has used the bird house design shown below as a service mark in connection with its provision of a variety of vacation rental and travel related services (the "Birdhouse Mark").  *See* Decl. at ¶6.



26.     The Birdhouse Mark is inherently distinctive as applied to the subject services and serves to identify and indicate the source of HomeAway's services to the consuming public.  *See* Decl. ¶6-11; Exhibits 1-7.

27.     This mark has been used and continues to be used prominently on several websites in the HomeAway global marketplace, including HomeAway.com website.  Other websites that utilize the Birdhouse Mark include, HomeAway.de (Germany), FeWo-Direkt.de (Germany),

HomeAway.co.uk (UK), Arbritel.fr (France), HomeAway.es (Spain), AlugueTemporada.com.br (Brazil), HomeAway.com.au (Australia), HomeAway.se (Sweden), HomeAway.pt (Portugal), HomeAway.ca (Canada), HomeAway.mx (Mexico), HomeAway.com.co (Colombia), HomeAway.com.ar (Argentina), HomeAway.at (Austria), HomeAway.dk (Denmark), HomeAway.no (Norway) and HomeAway.it (Italy).   Because it chooses to publish some of its marketplaces under names other than "HomeAway," HomeAway adopted and deployed the Birdhouse Mark as a global unifying brand both in the United States and in its operations around the world.   When HomeAway includes in its marketplace websites with regionally appropriate domain name, such as AlugeTemporada.com.br in Brazil or Abritel.fr in France or FeWo-Direkt.de in Germany, the Birdhouse Mark is used to signify that a HomeAway service is offered, uniting the Brand around the world.   *See* Decl. at ¶7.   Examples of HomeAway's use of the Birdhouse Mark on its websites are shown below.

28.    HomeAway.com



29.     AlugueTemporada.com.br



30.     Abritel.fr



31.     Fewo-Direkt.de



*See* Decl. at ¶7, Exhibits 1 – 5.

32.     HomeAway has increased the strength and significance of its Birdhouse Mark through its promotional activities. HomeAway has featured the Birdhouse Mark in television commercials, including two Television commercials aired during the Super Bowl in 2010 and 2011.  Stills from those commercials are included below.  *See* Decl. at ¶8, Exhibit 6.




 

33.     The Birdhouse Mark is used in a wide variety marketing and advertising including print ads, the HomeAway websites, social media sites, conferences, and other promotional material.  *See* Decl. ¶8, Exhibit 7. Examples are included below.







34.     The Birdhouse Mark is prominently displayed on the exterior of HomeAway's headquarters building, and the interior of its headquarters houses a two-story, three-dimensional birdhouse, enclosed by glass windows that face a major intersection in downtown Austin to further promote Birdhouse brand that has become synonymous with HomeAway's business and its Austin roots. *See* Decl. ¶9, Exhibit 8.





35.     Because the Birdhouse Mark is the signature, unifying brand of HomeAway, the company invites all newly-hired employees to paint and decorate a small, wooden birdhouse of their own to display at HomeAway's worldwide headquarters in Austin, Texas.  More than 120 employee-decorated birdhouses are on display in glass cases on the first and fourth floors of HomeAway's headquarters and HomeAway has posted photos of the collection on the "Blueprints" page of its HomeAway.com website.  *See* Decl. at ¶16.














*See* Exhibit 17.

36.    HomeAway has spent millions of dollars advertising and promoting its Birdhouse Mark that has been used as the primary identifying symbol of the business for nearly 8 years.

HomeAway has raised more than $450 million in private financing to build its business and its brand, and that brand is directly tied to the Birdhouse Mark. *See* Decl. at ¶¶7-9, 11.

37.     As a result of these efforts and the success of HomeAway's business, the Birdhouse Mark is distinctive and famous, and has come to identify the product and services of HomeAway in the minds of Owners, Travelers, consumers, and of other individuals working in the vacation rental industry, and the general consuming public. The results of HomeAway's investment is tangible and substantial: "HomeAway" and the Birdhouse Mark as well as HomeAway's excellent service have attracted hundreds of thousands of Owners and Travelers, and have generated enormous goodwill as the world's largest and most complete online marketplace of vacation and travel rental properties.  Through its efforts and expenditures, HomeAway has established itself in the marketplace among its Owners and Travelers as a reliable and credible source for searching, viewing, and locating vacation rental properties. *See* Decl. ¶¶7-11.

38.     As a result of HomeAway's long use and promotion of the Birdhouse Mark, HomeAway has acquired extremely valuable rights in the Birdhouse Mark as an indicator of source of its services. *See* Decl. ¶¶7, 9, 11.

39.     HomeAway has taken many steps to protect its valuable Birdhouse Mark. HomeAway's wholly-owned U.S. subsidiary, HomeAway.com, Inc. owns several trademark registrations for marks containing or comprising a stylized bird house and uses and licenses such marks for use in HomeAway's business. *See* Decl. at ¶10.

| MARK | REGISTRATION NO. AND DATE | Goods/Services |
|------|---------------------------|----------------|
|  | 3,596,173 <br><br> March 24, 2009 | Providing temporary lodging information via the Internet |
|  | 3996179 <br><br> July 19, 2011 | Vacation real estate listing services; Providing vacation real estate listing services via a global computer network; Providing vacation home rental information via the internet. |
|  | 4082610 <br><br> January 10, 2012 | Providing online newsletters featuring lodging, travel information, featured destinations, reviews, and other information related to lodging and travel providers; conducting workshops and seminars in the field of vacation property rental. |
|  | 4082611 <br> January 10, 2012 | Computer services for providing a real estate search platform configured to allow users to request and receive content from a website; Application Service Provider (ASP) featuring software in the field of rentals and sales related to real estate; ASP featuring software for use by real estate and travel based companies to advertise specials, make reservations, offer coupons, specials, discounts, and directions and for use in interactive customer services related to the rental or purchase of real estate; Providing information services in the field of ASP featuring software for real estate rental or sales; ASP featuring software for use by companies and individuals to advertise specials, make reservations, offer coupons, offer specials, offer discounts, sell real estate, provide directions, and for use in accessing interactive customer services of others; Design and development of visualization technologies for advertisement of real-estate and business of others; Application service provider, namely, hosting, managing, developing, analyzing, and maintaining applications, software, and web sites, of others in the fields of advertising and marketing; Computer service, namely, acting as an application service provider in the field of |

| | | |
|---|---|---|
| | | knowledge management to host computer application software for creating searchable databases of information and data; Computer service, namely, acting as an application service provider in the field of knowledge management to host computer application software for searching and retrieving information from databases and computer networks; Computer services in the nature of customized web pages featuring user-defined information and personal profiles. Computer services, namely, providing search engines for obtaining data on a global computer network; Providing a website that gives users the ability to create customized web pages featuring user-defined information. |
|  | 4082609 January 10, 2012 | Providing a website for the arrangement and booking of eco-travel and ecotours; Providing a web site and web site links to geographic information, map images, and trip routing; Providing a web site featuring travel information and commentary; Providing an on-line computer database in the field of travel information services; Providing an on-line searchable computer database featuring information on travel; Providing information, news and commentary in the field of travel; Providing links to web sites of others featuring travel; Providing reviews of travel service providers; Travel guide and travel information services. |
|  | 4082608 January 10, 2012 | Providing an interactive website that promotes real estate properties through offering prospective tenants and buyers photographs, property descriptions, text, price, location, maps and other information to be considered by a prospective tenant or buyer in making a rental or purchase decision; Providing an interactive website for advertising specials, offering of coupons, rebates, discounts and special offerings promoting the services of others, and responding to customer inquiries for others in the field of real estate; On-line advertising and marketing services related to the rental or sale of real property; Real estate marketing services in the field of temporary accommodations. |

40.     Attached as Exhibits 9 – 14 are true and correct copies of registrations for Trademarks owned by HomeAway from the Trademark Electronic Search System (TESS) database of the United States Patent and Trademark Office.  *See* Decl. at ¶10.

## VI.     DEFENDANT'S BUSINESS

41.     After HomeAway had established itself and invested substantial amounts of money and time promoting its services through the Birdhouse Mark, Defendant launched in 2008 an online travel rental website.  Defendant's website allows Travelers to rent accommodations in private residences in the United States and worldwide.  Defendant provides guidance on rates, processes payments and receives a transaction fee for bookings.  On information and belief, Defendant receives commissions primarily from the Traveler, but also a charges a small fee to the advertiser earning a total commission of between 12-15% on each transaction.  *See* Decl. at ¶11, 12.

42.     Defendant and HomeAway target and provide services to an overlapping class of Travelers for their respective services, through overlapping channels of trade.  On information and belief, Defendant, has long targeted the tenants in landlord owned apartments in major cities (such as New York, Paris, San Francisco, Berlin, etc.) as its major supplier of listings.  However, Defendant has recently increased its efforts to attract business in traditional vacation rental markets (such as the Gulf Coast, Rocky Mountains, Provence and Tuscany), in which HomeAway has long been well-established. *See* Decl. ¶ 5, 16, 18.

## VII.     DEFENDANT'S INFRINGING ACTIVITIES

43.     Defendant is well aware of HomeAway and its Birdhouse Mark.  In 2001, the CEO of Defendant visited the headquarters of HomeAway.  He was given a personal tour of HomeAway's headquarters and physically stood inside the large replica of the Birdhouse Mark that dominates the upper level of HomeAway's Austin, Texas headquarters. *See* Decl. at ¶13, Exhibit 8.

44.     Despite this knowledge, Defendant, on December 16, 2013, launched what it is calling its first ever major multimedia national advertising campaign dubbed "Home to You"

replete with images of birdhouses and a birdhouse logo (referred to herein as the Birdhouse Promotion). Defendant's "Birdhouse Promotion" is viewable online at the Defendant's website (www.birdbnb.com), which links directly to Defendant's main rental website. *See* Decl. at ¶14. Despite Defendant's indisputable knowledge of HomeAway's prior rights in its signature brand, the Birdhouse Mark, Defendant's Birdhouse Promotion displays a birdhouse logo substantially similar to the Birdhouse Mark, placed adjacent to the slogan "Home to You," making misassociation with HomeAway even more likely. *See* Decl. at ¶14-15.



*See* Exhibit 15.

     45.     The birdhouse logo used in Defendant's Birdhouse Promotion comprises essentially the same features as the Birdhouse Mark, and is confusingly similar in overall commercial impression:





*Airbnb Birdhouse*               *HomeAway Birdhouse Mark*

46.     Moreover, the Birdhouse Promotion viewable on Defendant's birdbnb.com site contains a nearly 5 minute video featuring 50 different birdhouses, further increasing the likely misassociation between HomeAway and Defendant and their respective services.



47.     Underneath the embedded video pane are pictures of the 50 birdhouses featured in the video.  A user can roll over the birdhouses, hear an audio clip of birdsong, and link to the corresponding rental property listed for rent on Defendant's website. Examples are included below.  *See* Decl. at ¶16.



Three Story Lookout Tower, Bend, OR



Cayucos Beach House, San Luis Obispo, CA

Chalet de Celeste, Lake Tahoe, CA

Tile / Mosaic House, Joshua Tree, CA

*See* Exhibit 15.

48.     As demonstrated below, the birdhouses featured repeatedly and prominently in Defendant's Birdhouse Promotion are similar to the birdhouses HomeAway highlights at its headquarters and on its Blueprints website to promote its business to the relevant consuming public.  *See* Decl. at ¶16.

   

*See* Exhibit 17.

49. On information and belief, HomeAway's first use and registration of the Birdhouse Mark long predates Defendant's use of the birdhouse logo and the Birdhouse Promotion. Defendant had constructive and actual notice of HomeAway's trademark rights in the Birdhouse Mark for identical or closely related services.  *See* Decl. at ¶¶ 13-14.

50.     On information and belief, Defendant's simulation of HomeAway's signature Birdhouse Mark for substantially identical online rental listing services is deliberate and calculated to damage HomeAway, its Birdhouse Mark, its business and its goodwill.   *See* Decl. ¶22.

51.     Defendant chose to feature a birdhouse logo and use birdhouses as the overarching and dominant theme for the Birdhouse Promotion with full knowledge of HomeAway's use of the Birdhouse Mark and with the unlawful intent to dilute HomeAway's mark, obtain consumer recognition and interest based upon the success and reputation of HomeAway, and to confuse consumers.  *See* Decl. ¶22.

52.     In addition to its own site, Defendant's Birdhouse Promotion featuring the infringing birdhouse logo and theme are linked and displayed on many other Internet websites that

are fully accessible in the United States twenty-four hours a day, seven days a week.  *See* Decl. ¶14.



*See* Exhibit 16.

53.    Defendant is not affiliated with or sponsored by HomeAway and has not been authorized by HomeAway to use the Birdhouse Mark or any confusingly similar marks, or the Birdhouse Promotion.

54.    Defendant is using a logo confusingly similar to the Birdhouse Mark and the Birdhouse Promotion in commerce, in connection with substantially identical or related services, provided to overlapping classes of customers through overlapping channels of trade.  Defendant's use of a logo confusingly similar to the Birdhouse Mark and the Birdhouse Promotion began long after HomeAway had established rights in the Birdhouse Mark, and after such mark had become famous.  *See* Decl. ¶¶ 6-9, 14-15, 18; Exhibit 16.

## VIII.   EFFECT OF DEFENDANT'S ACTIVITIES

55.    Defendant's Birdhouse Promotion and unauthorized use of a logo confusingly similar to the Birdhouse Mark is likely to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties at least as to some affiliation, connection or

association of Defendant with HomeAway, or as to the origin, sponsorship, or approval of Defendant's services by HomeAway.  *See* Decl. ¶¶15-21.

56.   There has been widespread media coverage of Defendant's Birdhouse Promotion to date.  Attached as Exhibit 20 is a list of some of the mentions that have appeared in the media to date regarding the promotion. *See* Decl. ¶17; Exhibit 20.

57.   Defendant's unauthorized use of the Birdhouse Mark and the Birdhouse Promotion falsely designates the origin of its services.   The likelihood of confusion and dilution of the Birdhouse Mark is obvious.  *See* Decl. ¶¶ 17-21.

58.   For example, one commentator at the "AdverBlog" wrote "I can't help but wonder if it's just a coincidence that the No. 1 competitor to [Defendant] (HomeAway) has as bird house as a logo."   The message was followed by an emoticon smiley face and a picture of the HomeAway Logo.   Consumers have also noted Airbnb's copying. In a message left on Defendant's birdbrb.com website displaying the Birdhouse Promotion, a user writes "This is so "HOMEAWAY . . . ."  *See* Decl. at ¶17, Exhibits 18 – 19.



*See* Exhibit 19.

59.   Defendant's use of the birdhouse logo and Birdhouse Promotion is likely to lead consumers seeking HomeAway online to be at least initially interested, attracted, or distracted by

Defendant's birdbnb.com and Defendant's travel rental site linked to it, to HomeAway's detriment and damage.  Defendant's unauthorized use of a logo confusingly similar to the Birdhouse Mark enables Defendant to trade on and receive the benefit of goodwill built up at great labor and expense by HomeAway over many years, and to gain acceptance for their services not solely on their own merits, but on the reputation and goodwill of HomeAway, its Birdhouse Mark, and its products and services.  The Birdhouse Promotion may lead customers to improperly assume that the Bidbnb.com website and the Airbnb services related to it are somehow another extension of the many websites operated by HomeAway.  *See* Decl. ¶¶ 15-21

60.     Defendant's Birdhouse Promotion and unauthorized use of a logo confusingly similar to the Birdhouse Mark is likely to dilute the distinctive quality of the distinctive Birdhouse Mark.  *See* Decl. ¶ 21.

61.     Defendant's Birdhouse Promotion and unauthorized use of a logo confusingly similar to the Birdhouse Mark unjustly enriches Defendant at HomeAway's expense.  Defendant has been and continues to be unjustly enriched by obtaining a benefit from HomeAway by taking undue advantage of HomeAway and its goodwill.   Specifically, Defendant has taken undue advantage of HomeAway by trading on and profiting from the goodwill in the Birdhouse Mark developed and owned by HomeAway, resulting in Defendant wrongfully obtaining a monetary and reputational benefit for its own business and services.  *See* Decl. ¶¶ 20-22.

62.     Defendant's Birdhouse Promotion and unauthorized use of a logo confusingly similar to the Birdhouse Mark removes from HomeAway the ability to control the nature and quality of products and services provided under the Birdhouse Mark, and places the valuable reputation and goodwill of HomeAway in the hands of Defendant, over whom HomeAway has no control.  *See* Decl. ¶ 21-22.

63.     Unless these acts of Defendant are restrained by this Court, they will continue, and they will continue to cause irreparable injury to HomeAway and to the public for which there is no adequate remedy at law.

## FIRST CAUSE OF ACTION
## FEDERAL TRADEMARK INFRINGEMENT

64.     HomeAway repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint as though the same were fully rewritten herein.

65.     The acts of Defendant complained of herein constitute infringement of HomeAway's federally registered Birdhouse Mark in violation of 15 U.S.C. § 1114(1).

66.     Defendant's acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of HomeAway's rights in the Birdhouse Mark, and with intent to cause confusion and to trade on HomeAway's vast goodwill in the Birdhouse Mark.   In view of the egregious nature of Defendant's infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## SECOND CAUSE OF ACTION
## FEDERAL UNFAIR COMPETITION

67.     HomeAway repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint as though the same were fully rewritten herein.

68.     The acts of Defendant complained of herein constitute trademark infringement, false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.     Defendant's acts of trademark infringement, false designations of origin, and unfair competition have been willful and in bad faith, making this an exception case under 15 U.S.C. § 1117(a).

## THIRD CAUSE OF ACTION
## FEDERAL TRADEMARK DILUTION

70.     HomeAway repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint as though the same were fully rewritten herein.

71.     HomeAway's Birdhouse Mark became famous prior to the acts of Defendant complained of herein.

72.     The acts of Defendant's complained of herein constitute dilution of HomeAway's famous Birdhouse Mark in violation of 15 U.S.C. § 1125(c).

73.     Defendant's violations of 15 U.S.C. § 1125(c) have been willful and that HomeAway is entitled to damages therefor.

74.     HomeAway has been and will continue to be irreparably harmed and damaged by Defendant's conduct and HomeAway lacks an adequate remedy at law to compensate for this harm and damage.

## FOURTH CAUSE OF ACTION
## VIOLATION OF TEXAS ANTI-DILUTION LAW

75.     HomeAway repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint as though the same were fully rewritten herein.

76.     Defendant's conduct described above is likely to injure HomeAway business and/or dilute the distinctive quality of HomeAway's federally registered mark in violation of Tex. Bus. & Com. Code § 16.29.

77.      Defendant's violations of the Texas Anti-Dilution Statute have been willful.

78.     HomeAway has been and will continue to be irreparably harmed and damaged by Defendant's conduct and HomeAway lacks an adequate remedy at law to compensate for this harm and damage.

## FIFTH CAUSE OF ACTION
## COMMON LAW UNFAIR COMPETITION

79.     HomeAway repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint as though the same were fully rewritten herein.

80.     Defendants acts described above trade upon the goodwill established by HomeAway in the Birdhouse Mark and constitute unfair competition under the common law of the State of Texas.

81.      Defendant's acts of unfair competition have been willful.

82.     Defendant has been unjustly enriched by its acts of unfair competition.

83.     HomeAway has been and will continue to be irreparably harmed and damaged by Defendant's conduct and HomeAway lacks an adequate remedy at law to compensate for this harm and damage.

## SIXTH CAUSE OF ACTION
## COMMON LAW TRADEMARK INFRINGEMENT

84.     HomeAway repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint as though the same were fully rewritten herein.

85.     The acts of Defendant complained of herein constitute trademark infringement in violation of the common law of the State of Texas.

86.      Defendant's acts of trademark infringement have been willful.

87.     HomeAway has been and will continue to be irreparably harmed and damaged by Defendant's conduct and HomeAway lacks an adequate remedy at law to compensate for this harm and damage.

## SEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT

88.     HomeAway repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint as though the same were fully written herein.

89.     The acts of Defendant complained of herein constitute unjust enrichment of Defendant at the expense of HomeAway.

## PRAYER FOR RELIEF

WHEREFORE, HomeAway prays for entry of an order and judgment that:

1.     Defendant has infringed the Birdhouse Mark in violation of 15 U.S.C. § 1114(1).

2.     Defendant has engaged in trademark infringement, false designation of origin and unfair competition in violation of 15 U.S.C. 1125(a).

3.     Defendant is in violation of Tex. Bus. & Com. Code § 16.29.

4.     Defendant has been unjustly enriched.

5.      Defendant and its officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be preliminarily and permanently enjoined and restrained from infringing the Birdhouse Mark by, among other things:

      i.      Publishing or making available to the public in any form or media the "Home to You" birdhouse advertising/promotion currently hosted at www.birdbnb.com or any other form of this advertising/promotion or variation thereon;

      ii.      using the Birdhouse Mark or any other reproduction or colorable imitation in a manner that is likely to cause confusion as to whether Defendant's services originate from HomeAway, or as to an association, affiliation or connection between Defendant and HomeAway, including promotion of Defendant's services using actual birdhouses or birdhouse themes;

      iii.      using the Birdhouse Mark and any other reproduction or colorable imitation in any manner so as to dilute the distinctive quality of such mark in connection with products and services not originating with HomeAway or authorized by HomeAway, from otherwise competing unfairly with HomeAway in any manner, including promotion of Defendant's services using actual birdhouses or birdhouse themes.

6.      Defendant, pursuant to 15 U.S.C. § 1116(a), shall file with this Court and serve upon HomeAway within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

7.      Defendant, pursuant to 15 U.S.C. § 1118, shall deliver up for destruction, or show proof of said destruction or sufficient modification to eliminate all products, displays, advertisements, commercials, Internet postings and advertisements, promotional items or other matter in the possession, custody or control of Defendant bearing or embodying the Birdhouse Mark or otherwise infringing or diluting the Birdhouse Mark;

8.      HomeAway be awarded Defendant's profits derived from Defendant's infringing acts pursuant to 15 U.S.C. § 1117;

9.      HomeAway be awarded damages to compensate HomeAway for Defendant's infringing and willful acts of dilution pursuant and 15 U.S.C. 1125(c)(5), 15 U.S.C. § 1117, increased up to three times as provided by applicable law;

10.      HomeAway be awarded punitive damages;

11.      HomeAway be awarded its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117; and,

12.      HomeAway recover such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury in accordance with Federal Rule of Civil Procedure 38(b).

Dated:  December 23, 2013                    Respectfully submitted,


                                             */s/ Michael Simons*
                                             Michael Simons
                                             msimons@akingump.com
                                             Texas Bar No. 24008042
                                             Marwan Elrakabawy
                                             melrakabawy@akingump.com
                                             Texas Bar No. 24055447
                                             AKIN GUMP STRAUSS HAUER & FELD LLP
                                             300 West 6th Street, Suite 2100
                                             Austin, Texas 78701
                                             Telephone: 512.499.6200
                                             Facsimile:  512.499.6290

                                             Karol A. Kepchar (pro hac vice pending)
                                             kkepchar@akingump.com
                                             D.C. Bar No. 491701
                                             AKIN GUMP STRAUSS HAUER & FELD LLP
                                             1333 New Hampshire Avenue, N.W.
                                             Washington, D.C. 20036-1564
                                             Telephone: 202.887.4000
                                             Facsimile:  202.887.4288


                                             **ATTORNEYS FOR PLAINTIFFS**